UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT D. FRONCZAK,

                   Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER
OF SOCIAL SECURITY,

            Defendant.

_____/

Civil Action No.: 16-11554
Honorable Paul D. Borman
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 14, 16]**

Plaintiff Scott D. Fronczak appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his applications

for disability insurance benefits (DIB) and supplemental social security

income benefits (SSI) under the Social Security Act.  Both parties have filed

summary judgment motions, referred to this Court for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the

record, the Court finds that the administrative law judge's (ALJ) decision is

supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 16] be **GRANTED**;

- Fronczak's motion [ECF No. 14] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Fronczak's Background and Disability Applications

Born December 17, 1986, Fronczak was 27 years old when he submitted his applications for disability benefits in May 2013.  [ECF No. 10-5, Tr. 123-30].  He has a high school education and past work experience as a cook, dishwasher, and mechanic/technician.  [ECF No. 10-6, Tr. 156]. Fronczak alleges a disability onset date of November 9, 2010, and that he is disabled by peripheral vascular disease, depression, anxiety, restless leg syndrome, lower back pain, autonomic neuropathy, and hypertension. [ECF No. 10-6, Tr. 155].

After the Commissioner denied both disability applications initially, Fronczak requested a hearing, which took place in November 2014, during which he and a vocational expert (VE) testified.  [R. 10-2, Tr. 27-43].  In a December 17, 2014, written decision, the ALJ found Fronczak to be not disabled.  [*Id.*, Tr. 9].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Fronczak timely filed for judicial review.  [*Id.*, Tr. 1-7; ECF No. 1].

## B. The ALJ's Application of the Disability Framework Analysis

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c); § 920(c).

considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Fronczak was not disabled. At the first step, he found that Fronczak had not engaged in substantial gainful activity since his alleged onset date. [ECF No. 10-2, Tr. 15]. At the second step, he found that Fronczak had the severe impairments of "peripheral vascular disease, autonomic neuropathy, and low back disorder." [*Id.*]. Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 16].

Between the third and fourth steps, the ALJ found that Fronczak had

the RFC to perform light work[3] except:

> [T]he claimant can only lift and carry 10 pounds frequently and 20 pounds occasionally. The claimant can stand and/or walk (with normal breaks) for 2 hours of an 8-hour workday, and sit (with normal breaks) for 6 hours of an 8-hour workday. The claimant can push and pull with his upper and lower extremities within the same weight restrictions outline above. The claimant needs to avoid concentrated exposure to vibrations and extreme cold. The claimant can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl.

[*Id.*, Tr. 16]. At step four, the ALJ found that Fronczak was unable to perform any past relevant work. [*Id.*, Tr. 20]. With the assistance of VE testimony, the ALJ determined at step five that Fronczak could perform occupations such as hand packager, small products assembler, and visual inspector/checker, and that those jobs existed in significant numbers in the economy, rendering a finding that he was not disabled. [*Id.*, Tr. 21].

## II.    ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Fronczak argues that the ALJ erred by not finding his depression and anxiety to be severe impairments; in concluding that his severe medical problems do not meet or equal a listed impairment; and by violating the treating physician rule, and thus crafting an inaccurate RFC. The Court disagrees and recommends that the ALJ's decision be affirmed.

**B.**

In his analysis, the ALJ noted Fronczak's recurring diagnosis of depression, but found that the evidence showed it to cause no more than minimal limitations in his ability to perform work-related activities. [ECF No. 10-2, Tr. 15]. He also noted that he considered the combined effects of all severe and non-severe impairments in assessing the RFC, as he is

6

required to do.  [*Id*.].  Nevertheless, the RFC contains no mental or non-exertional limitations, and the ALJ did not cite medical evidence pertaining to Fronczak's depression or anxiety.  Fronczak contends that this is in error, but the Court finds Fronczak has failed to meet his burden of proving these severe impairments, and that any error is harmless.

Fronczak argues that the evidence of his depression and anxiety is more than *de minimus*, but offers no proof for this assertion beyond citing to a large number of pages in the medical record mentioning either depression or anxiety.  [ECF No. 14, PageID 486, citing ECF No. 10-3, Tr. Tr. 50; ECF No. 10-6, Tr. 155, 173, 185; ECF No. 10-7, Tr. 206, 231, 233, 240, 252-53, 256, 258, 260, 262-64, 288, 324, 342-43, 348, 356].  But some of these records reflect Fronczak's self-reports of depression, and most merely mention a history or report of depression.  [*Id*.].  An October 2011 consultative examiner found him to have dysthymic and panic disorders, but indicated that he got along well with others and was able to understand, remember and follow through with instructions.  [*Id*., Tr. 262-64].  A March 2012 report by Ross Halpern, Ph.D., describes Fronczak as having mild depression and stress, and as having occasional symptoms.  [*Id*., Tr. 355-56].  The ALJ recognized that Fronczak had been diagnosed with depression, [ECF No. 10-2, Tr. 15], but a mere diagnosis says nothing

about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (diagnosis of arthritis without doctors reports documenting "any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain," was insufficient to establish severe impairment).

Fronczak notes that the state agency medical consultant, Michael McCarthy, Ed.D, found his affective and anxiety disorders to be severe, but as the Commissioner notes, Dr. McCarthy also found only mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. [ECF No. 10-3, Tr. 63-64]. Such conclusions are in line with a finding of non-severity. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

Also, as noted, once the ALJ found at least one severe impairment, he was required to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8p, 1996 WL 374184 (1996). So long as the ALJ considers all of a claimant's impairments, both severe and non-severe, through the remaining steps of the analysis, any failure at step two to find additional impairments severe does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ said that he

would consider Fronczak's non-severe impairments when assessing his RFC, but he did not further discuss the evidence relating to Fronczak's depression.  Nonetheless, Fronczak has not set forth any evidence that he suffers a mental impairment that requires a more restrictive RFC, which is his burden.  *Higgs*, 880 F.2d at 863; *Preslar*, 14 F.3d at 1110.  Therefore, the ALJ's error, if any, is harmless.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

## C.

Next, Fronczak contends that the ALJ's listing and medical equivalency analysis was insufficient.  The ALJ's single paragraph of analysis does not mention the considered listings or point to any pages of the record.  [ECF No. 10-2, Tr. 16].  Fronczak suggests that this alone requires remand, citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011).  The *Reynolds* court suggested that an insufficient listing or equivalency analysis "was not harmless, for the regulations indicate that if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary."  *Id.* at 415.  The court found that this required remand without additional analysis of whether the claimant's impairments actually met or equaled a listing.  *Id.*

Sixth Circuit case law subsequent to *Reynolds* has taken a different approach. In *Forrest v. Comm'r of Soc. Sec.*, the court found that any error in the ALJ's step-three findings "is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment between October 2006 and July 2011." 591 F. App'x 359, 366 (6th Cir. 2014). Similarly, in *Malone v. Comm'r of Soc. Sec.*, even though the ALJ did not make specific findings, the court found it sufficient that the ALJ expressed that the claimant's impairments did not meet or equal a listing, and that substantial evidence supported that finding. 507 F. App'x 470, 472 (6th Cir. 2012).

As in *Malone*, the ALJ here expressed that Fronczak did not have impairments that met or were equivalent to a listing. [ECF No. 10-2, Tr. 16]. In addition, he cited the medical opinion of state agency physician Jacob Weintraub, M.D.; Dr. Weintraub's signature on the disability determination form and finding that Fronczak can carry out light work "ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Fronczak alleges that his

impairments meet Listings 4.11, 4.12, and 11.14,[4] but he provides no support.  Thus any error is harmless.  *Forrest*, 591 F. App'x at 366.

## D.

Fronczak argues that the ALJ erred in assessing the November 2014 opinion of treating physician Razmig A. Haladjian, M.D., and that this resulted in an inaccurate RFC.  The Court disagrees, as the record does not support Dr. Haladjian's opinion and it is insufficient to constitute a medical opinion under Social Security regulations.

Prior to his opinion, Dr. Haladjian began treating Fronczak in August 2010, when he was referred to the Michigan Interventional Pain Center from his primary physician.  [ECF No. 10-7, Tr. 216-17].  Dr. Haladjian found that Fronczak had full lower extremity motor power and intact sensation, normal gait, normal tiptoe and heel walking, limited anterior flexion and posterior extension, and all testing was negative, including straight leg raising.  [*Id.*, Tr. 217].  He assessed low back pain.  [*Id.*].  Dr. Haladjian saw Fronczak again in October, first for another consultation and then twice more for lumbar steroid injections to alleviate Fronczak's pain.  [*Id.*, Tr. 219-20, 222-25].

---

[4] These listings pertain to chronic venous insufficiency of a lower extremity, peripheral arterial disease, and peripheral neuropathy.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.

In June 2011, Fronczak was seen at the Western Wayne Family Health Center complaining of chronic leg pain radiating down his legs, and was found to have bluing of the toes and feet. [*Id.*, Tr. 234-35]. His toes were cool to the touch. [*Id.*]. He had no insurance at that time and could not be referred to a rheumatologist. [*Id.*]. Fronczak continued to be treated there and elsewhere throughout 2011, and was assessed with possible Raynaud's disease, though on referral in October, Ali Dagher, M.D., examined him and stated that she "would not characterize the patient's symptoms as Raynaud's," as "[t]hey rather reflect vascular insufficiency in the lower extremities." [*Id.*, Tr. 289]. She also found that his feet were cold to the touch, though there was no discoloration at that time. [*Id.*].

Later in October, Fronczak was seen by Elizabeth W. Edmond, M.D., for a disability determination. [*Id.*, Tr. 266-71]. She found no spasm, full range of motion of the cervical spine, shoulders, elbows, hips, knees, and ankles, and somewhat limited range of motion of the lumbar spine. [*Id.*, Tr. 267-68]. His feet were cold to the touch, but peripheral pulses were equal bilaterally in the upper and lower extremities. [*Id.*, Tr. 267]. She assessed chronic lumbar and lower extremity pain because there was "no reason not to believe [his] long history of back pain," even though there were "no objective findings today." [*Id.*]. Dr. Edmond stated that a review of the

rheumatologist's studies and final diagnosis would help to determine Fronczak's pathology. [*Id.*].

Later that month, Fronczak had an arterial Doppler and a BCR Duplex scan, both of which returned normal results. [*Id.*, Tr. 282-83]. He saw Dr. Dagher again in November, who found his condition to be basically unchanged, and referred him for an arteriogram. [*Id.*, Tr. 290]. The arteriogram showed very slow blood flow in arteries and blood vessels in the right and left legs, no classic pathognomonic signs for Buerger's disease, and very small size of the peroneal and intra-tibial vessels. [*Id.*, Tr. 299-301]. A conclusive diagnosis was not made. [*Id.*].

In February 2012, Fronczak returned to Dr. Haladjian, who noted that the steroid injections had alleviated his back pain, but that he now suffered from localized pain in the calves and feet. [*Id.*, Tr. 358]. Dr. Haladjian opined that Fronczak was "possibly a very good candidate for a trial of spinal cord stimulation." [*Id.*, Tr. 359]. After being cleared for the operation in a psychological assessment, [*Id.*, Tr. 355-57], Dr. Haladjian inserted a spinal cord stimulator in August 2012. [*Id.*, Tr. 364-66]. A few days later, after Fronczak reported no improvement in his pain, the stimulator was removed. [*Id.*, Tr. 367-69]. In September 2012, Fronczak told Dr. Haladjian that his medications were not helping his pain, and Dr. Haladjian

opined that it was in his best interest to undergo detoxification, and replace the current medications with Suboxone. [*Id.*, Tr. 370]. This was done a few days later, and Fronczak was given Suboxone and discharged when his withdrawal symptoms and cravings were relieved. [*Id.*, Tr. 373-74].

Fronczak visited the Henry Ford Center for Health Services in January 2013 for worsening leg pain, and Fronczak stated that his insurance had lapsed and he had run out of medications. [*Id.*, Tr. 328-32]. The Suboxone was providing "decent pain relief." [*Id.*, Tr. 329]. He was given a one-time dose of pain medications and a list of free clinics. [*Id.*]. Fronczak did not see Dr. Haladjian again until April 2013, when Dr. Haladjian found that the Suboxone had helped somewhat to control his pain without side effects; no interventions, changes to medications, or therapy was recommended. [*Id.*, Tr. 382-83]. In October 2013, Fronczak followed up with Dr. Haladjian, reporting again that Suboxone helped somewhat to control his pain without side effects. [*Id.*, Tr. 408]. This was also the case on subsequent visits in January and April of 2014, where he additionally exhibited "no signs of drug aberrant behavior," his speech was fluent, and he interacted appropriately with staff. [*Id.*, Tr. 411-15].

In November 2014, Dr. Haladjian opined in a letter that Fronczak had suffered bilateral lower back pain radiating down the buttocks, posterior

thighs and to his feet, which was predominantly increased "with activities such as sitting, standing, walking, bending and twisting." [*Id.*, Tr. 420]. The pain is only relieved by lying down, woke him up at night, and interfered with his activities of daily living. [*Id.*]. Dr. Haladjian also summarized the results of the aforementioned arteriogram, and noted the poor result from the spinal stimulator. [*Id.*]. He stated that if Fronczak was "sitting for any time his feet and ankles swell, so he has to elevate his legs or lie down to relieve the symptoms," which was "consistent with his diagnosis of Peripheral Vascular Disease and Neuropathy." [*Id.*]. He opined, "It would be difficult for him to work in any capacity on any consistent level to the above symptoms and limitations." [*Id.*].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant

factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases."  *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).  Courts will not hesitate to remand when the ALJ failed to articulate "good reasons" for not fully crediting the treating physician's opinion.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

Here, the ALJ afforded Dr. Haladjian's letter little weight because it was "little more than a brief, all-encompassing declaration" with "overly broad limitations."  [ECF No. 10-2, Tr. 19].  He noted that the claim of "constant" pain was inconsistent with evidence that Fronczak's back pain had been "alleviated" by injections, and that Suboxone provided him with

pain relief.  [*Id.*, Tr. 19-20].  Nevertheless, he found reasonable Dr. Haladjian's list of activities that exacerbated Fronczak's symptoms.  [*Id.*, Tr. 19].

The Court concurs with the ALJ's determination regarding the insufficiency of Dr. Haladjian's letter; it is not a "medical opinion" to which an ALJ is required to defer.  A medical opinion must reflect "judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."  20 C.F.R. §§ 404.1527; 416.927(a)(1).  Here, Dr. Haladjian summarized Fronczak's reported symptoms and pain triggers, the results of the arteriogram, and the doctor's treatment and diagnoses, and then concluded that Fronczak cannot work.  [ECF No. 10-7, Tr. 420].  Dr. Haladjian provided no specifics as to what Fronczak is able to do despite his impairments or any particular restrictions. Thus, the letter fails to qualify as a medical opinion.  *Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (neither doctor's note that plaintiff could not work nor report that restated the medical evidence constituted a medical opinion); *Pedigo v. Astrue*, No. 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009), *adopted*, No. 1:09-CV-93, 2010 WL 1408427 (E.D. Tenn. Apr. 2, 2010) (where

alleged opinions "contain[ed] only the subjective complaint of the claimant and the diagnosis of a treating physician unaccompanied by any objectively-supported medical opinion as to the limitations imposed by the condition, the ALJ may properly discount them.").

The ALJ provided other good reasons for discounting the weight he gave to Dr. Haladjian letter. The record supports the ALJ's finding that Dr. Haladjian's opinion that Fronczak was in constant pain was inconsistent with the record, at least to the extent that Dr. Haladjian intimated that Fronczak's pain was disabling. Dr. Haladjian did repeatedly indicate that Fronczak was in constant pain, [ECF No. 10-7, Tr. 373, 382, 408, 411, 414], but after Fronczak began taking Suboxone, Dr. Haladjian reported that it provided some pain relief, and he only visited the doctor for scheduled follow ups every three to six months, with one exception when he ran out of medication. [*Id.*, Tr. 328-32, 373-74, 382-83, 408-15]. And while Fronczak claimed in his function report that his Suboxone caused him headaches and drowsiness, the record reflects that it caused him no side effects. [ECF No. 10-6, Tr. 180; ECF No. 10-7, Tr. 408, 414].

Dr. Haladjian's statement that Fronczak must elevate his legs to relieve his symptoms if he "is sitting for any time," [ECF No. 10-7, Tr. 420], is especially unsupported by the medical evidence. The records from after

18

Fronczak began taking Suboxone do not that substantiate the claim that Fronczak can never sit "for any time" without pain; they do not indicate that sitting was a trigger for his pain at all. [ECF No. 10-7, Tr. 328-32, 373-74, 382-83, 408-15].

Fronczak protests that the ALJ did not consider all of the relevant factors for assessing the weight given to a treating source's opinion, including the length of treatment with Dr. Haladjian, the extent of the treatment relationship, and the supportability of his conclusions. [ECF No. 14, PageID 493]. As noted above, the ALJ did consider the supportability of Dr. Haladjian's opinion, and Fronczak cites no authority requiring the ALJ to explicitly reference every factor. Rather than being required to mechanically address each relevant factor, the authority requires only that the ALJ provide "good reasons" that "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The ALJ here sufficiently articulated his good reasons, so remand is not warranted.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 16] be **GRANTED**; that Fronczak's

motion [ECF No. 14] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).


s/Elizabeth A. Stafford<br>ELIZABETH A. STAFFORD

Dated: August 7, 2017                                United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 7, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager